UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|   |   |   |
|---|---|---|
| NOCO COMPANY, | : | CASE NO. 1:18-cv-2561 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 13] |
| vs. | : | |
| | : | |
| LIU CHANG, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff NOCO Company, an international consumer battery product manufacturer

and distributor, sues foreign Defendant Liu Chang for false advertising, trademark

infringement, and deceptive trade practices.

For the second time, Plaintiff NOCO moves for leave to serve Defendant Chang by

alternative means.[1]

For the following reasons, the Court **GRANTS** Plaintiff's motion.

## I. Background

Plaintiff NOCO alleges that Liu Chang uses the NOCO name and branding to

advertise and sell battery product storage cases to consumers on Amazon.[2]

The history of Plaintiff's attempts to send waiver of service materials to Chang is

recounted in the Court's earlier Order denying Plaintiff's motion to serve Chang by

alternative means.[3]  In sum, Plaintiff has determined that Chang is based in China and uses

---

[1] Docs. 7, 13.
[2] Doc. 13 at 2.
[3] Doc. 8.

the Amazon merchant account "Co2Crea."[4]  Amazon's U.S. website does not list Chang's

address or contact information.[5]  The U.S. Patent and Trademark Office, (the "PTO"),

identifies Liu Chang as the current owner of the Co2Crea trademark and lists his address as

A1-404# Jinxiujiangnan Longhua, Shenzhen, GD China 518109 (the "China address").[6]

Plaintiff sent materials requesting that Chang waive the service of summons to the

China address and through the Amazon messaging center.[7]  Although someone signed for

the package at the China address and Chang responded to at least one message sent

through Amazon's messaging system, Chang did not waive service.[8]

The Court denied Plaintiff's original motion to serve Change through alternative

means without prejudice, noting that although Plaintiff had the China address it had not yet

attempted service through the Hague Convention processes.[9]  The Court advised Plaintiff

that it could renew its motion for alternative service if China did not effect service within

the Hague Convention's requisite six months.[10]

On January 8, 2019, Plaintiff renewed its motion for alternative service.[11]  Plaintiff

NOCO Company informed the Court that its international process server sent service

materials to China on June 25, 2019, and Chinese authorities received them on June 28,

---

[4] *Id.* at 1.

[5] *Id.* at 2.  Although an address is listed on Amazon's Mexico website, an attempt to send waiver documents to the address provided to Amazon Mexico was unsuccessful.  Doc. 7-2 at 1-2.

[6] Doc. 8 at 1-2.

[7] *Id.* at 2.

[8] *Id.*

[9] *Id.* at 5.

[10] Hague Convention, Arts. 13 & 15; FED. R. CIV. P. 4(f) advisory committee's note to 1993 amendment ("Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States.").

[11] Doc. 13.

2019.[12]  More than six months have passed, and Chinese authorities have yet to serve

Defendant Chang.[13]

## II.  Discussion

Federal Rule of Civil Procedure 4(f) governs service in foreign countries.  The rule

mandates the use of Hague Convention service methods unless the defendant's address is

unknown or service may be effected without sending documents abroad, such as through a

U.S. subsidiary.[14]  In cases in which Hague Convention procedures are mandatory, the

Court may allow alternative service under Rule 4(f)(3) if a foreign nation fails to complete

service within six months.[15]  The alternative service method must not be prohibited by

international agreement and must comport with due process.[16]

Plaintiff NOCO moves for leave to serve foreign Defendant Chang by alternative

means under Rule 4(f)(3).  Plaintiff attests that it has followed the Hague Convention

procedures and attempted to serve Defendant at the addresses on file with the PTO and

---

[12] Doc. 13-1 at 1.

[13] *Id.* at 2.

[14] FED. R. CIV. P. 4(f) advisory committee's note to 1993 amendment ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."); *Chanel, Inc. v. Song Xu*, No. 2:09-CV-02610-CGC, 2010 WL 396357, at *3 (W.D. Tenn. Jan. 27, 2010) (noting that the Hague Convention did not apply to service upon defendants because, even after a thorough investigation, the addresses of defendants were unknown); *e.g.*, *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 277–80 (S.D.N.Y. 2013) (authorizing service of a corporate subsidiary's executive who lived in China through service of the subsidiary's U.S. parent company and its counsel, as this substitute service did not trigger the requirements of the Hague Convention); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (authorizing service of a CEO living in China through the service of his company's U.S. counsel and its U.S. registered agent and explaining that "[u]se of these methods would not run afoul of the Hague Convention since in both instances no documents would be transmitted abroad").

[15] Hague Convention, Arts. 13 & 15; FED. R. CIV. P. 4(f) advisory committee's note to 1993 amendment ("Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States.").

[16] *See* FED. R. CIV. P. 4(f)(3); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016) ("Rule 4(f)(3) permits the court to order service by any means not prohibited by international agreement, as long as the method of service comports with constitutional notions of due process."); *Studio A Entm't, Inc. v. Active Distribs.*, No. 1:06cv2496, 2008 U.S. Dist. LEXIS 5883, at *7–8 (N.D. Ohio Jan. 15, 2008) ("To meet this [due process] requirement, the method of service must be 'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950))).

Amazon Mexico.[17]  As of the date of Plaintiff's renewed motion, Chinese authorities had

not served Defendant Chang and the six-month required waiting period had expired.[18]

Plaintiff, having attempted Hague service, has met the threshold requirement for

obtaining permission to serve Defendant through alternative means.

The Court must next evaluate whether Plaintiff's requested means of service,

through Amazon's messaging center, is acceptable under international agreements and

comports with due process.[19]

Plaintiff seeks to serve Defendant Chang, who is Chinese.[20]  China is a signatory to

the Hague Convention but does not permit service by postal channels.[21]  However, courts

have found that email is a permissible method of serving Chinese defendants.[22]  While

Amazon's messaging center is not email *per se*, courts have allowed service to Chinese

defendants through other electronic messaging services, including through Amazon's

messaging center.[23]

The proposed use of Amazon's messaging center is therefore acceptable under

---

[17] Doc. 13-1 at 1.

[18] *Id.* at 2.

[19] *See* supra n. 16.

[20] Doc. 7-1 at 2.

[21] *See China - Central Authority & Practical Information*, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited Jan. 30, 2020).

[22] Courts have held that Article 10's reference to service by "postal channels" does not include e-mail and thus that objections to Article 10 allow e-mail service.  *See, e.g., F.T.C. v. PCCare247 Inc.,* 12 Civ. 7189, 2013 WL 841037, at *3–*4 (S.D.N.Y. March 7, 2013) (authorizing service by e-mail and Facebook to defendants in India under Rule 4(f)(3) when the India central authority declined to serve defendants, and stating that "[n]umerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10").

[23] *See Keck v. Alibaba.com, Inc.,* No. 17-cv-05672-BLF, 2018 WL 3632160, at *4 (N.D. Cal. July 31, 2018) (allowing service to Chinese defendants through AliExpress.com messaging system); *Shenzhen Ruobilin Network Tech., Ltd. V. SJG-Lesn,* 16-cv-386-wmc, 2016 WL 6988868, at *2 (W.D. Wis. Nov. 29, 2016) (granting motion to allow service of process through Amazon's messaging center); *Innovelis, Inc. v. Auch,* No. 2:15-cv-02661, slip op. at 1 n. 1 (E.D. Pa. Aug. 13, 2015) (authorizing service through Amazon's messaging center because "[a]ll of the Defendants sell products on Amazon.com and all of them have communicated with Plaintiff through Amazon's message portal in the past"); *Rubie's Costume Company, Inc. v. Yiwu Hua Hao Toys Co., Ltd.,* No. 2:18-cv-01530-RAJ, 2019 WL 6310564, at *4 (allowing service through email and Amazon storefronts).

Case No. 1:18-cv-2561
Gwin, J.

international agreements.

The Court next evaluates whether service by such means comports with due

process. Any method of service must be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections."[24]

Plaintiff has shown that service through Amazon's messaging center is reasonably

calculated to reach Defendant.

Defendant is an online retailer. Defendant has not made his physical address

available but has responded to at least one message from Plaintiff sent through Amazon's

messaging center. This is not surprising given that online merchants "depend[] on

electronic communication … for [their] livelihood" and often rely solely upon such means

of communication in their interactions with customers.[25]

Plaintiff has messaged Defendant previously through Amazon's messaging service.[26]

At least two of the messages did not "bounce back," and Defendant answered one of the

messages.[27] As it appears that Defendant is capable of receiving messages through

Amazon, the Court believes that service is likely to reach Defendant in this manner.

Plaintiff's request for service through alternative means is therefore granted.

### III. Conclusion

For the reasons stated, the Court **GRANTS** Plaintiff's motion to serve Defendant

---

[24] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[25] *Chanel, Inc.*, 2010 WL 396357, at *4.

[26] Doc. 7-2 at 2-3.

[27] *Lexmark Intern., Inc.v. Ink Tech. Printer Supplies, LLC*, 295 F.R.D. 259, at 262 (S.D. Ohio Dec. 2, 2013) (permitting email service where "communication has occurred with a representative of the respective Defendant at those email addresses"). One of the messages could not "be delivered due to an issue with one or more attachments." Doc. 7-2 at 3. Subsequent messages were delivered and at least one received a response from Chang. *Id.*

Chang by alternative means.  The Court directs Plaintiff to serve a copy of all pleadings on

Defendant through Amazon's messaging center.  Should Defendant enter a formal

appearance, *pro se* or by counsel, service shall revert to standard processes.


      IT IS SO ORDERED.


Dated:  February 03, 2020            *s/       James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE